IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**ROBERT C. IRWIN,**

       **Plaintiff,**

v.                                                           CIV. 02-1632 LAM

**JO ANNE B. BARNHART,**
**Commissioner, Social Security Administration,**

       **Defendant.**

# MEMORANDUM OPINION AND ORDER

     **THIS MATTER** is before the Court on Plaintiff's *Motion to Reverse or Remand Administrative Agency Decision* (*Doc. 20*). In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to having the undersigned United States Magistrate Judge conduct all proceedings and enter final judgment in this case. The Court has reviewed Plaintiff's motion and his brief in support of the motion (*Doc. 21*), Defendant's response to the motion (*Doc. 24*) and relevant law.[1] Additionally, the Court has meticulously reviewed and considered the entire administrative record (hereinafter "*Record*" or "*R.*"). For the reasons set forth below, the Court **FINDS** that Plaintiff's motion should be **GRANTED**, and this case **REMANDED** to the Commissioner of Social Security (hereinafter, "Commissioner") for further proceedings consistent with this Memorandum Opinion and Order.

---

    [1]Plaintiff did not file a reply to Defendant's response to the motion.

## I.  Procedural History

On August 7, 2000, Plaintiff, Robert C. Irwin, applied for disability insurance benefits. (*R. at 67-69.*)[2]  In connection with his application, he alleged a disability since June 15, 1998. (*R. at 67.*)  In connection with his application, Plaintiff alleged a disability due to a back injury, herniated discs and damage to vertebrae. (*R. at 85.*)  There is also some evidence in the *Record* that Plaintiff suffers from depression, adjustment disorder and erectile dysfunction. (*R. at 138-142, 150.*)  Plaintiff's application was denied at the initial and reconsideration levels. (*R. at 46-47.*)

An administrative law judge (hereinafter "ALJ") conducted an initial hearing on February 13, 2002. (*R. at 194.*)  On March 1, 2002, the ALJ issued his decision in which he found that Plaintiff was not disabled. (*R. at 194-199*.)  After the ALJ issued his decision, Plaintiff filed a request for review. (*R. at 203-204*.)  On October 25, 2002, the Appeals Council issued its decision denying his request and upholding the decision of the ALJ. (*R. at 216-217.*)  On December 26, 2002, Plaintiff filed his complaint in this action.  *See **Plaintiff's Complaint** (Doc. 1)*.  On May 29, 2003, pursuant to Defendant's ***Unopposed Motion to Remand*** (*Doc. 9*), the Court remanded this case to the Commissioner and ordered the Commissioner to remand the case to the ALJ for a *de novo* hearing. *See **Order of Remand** (Doc. 14)*.  The remand was required because the cassette tape of the initial hearing was defective. *See* Defendant's ***Unopposed Motion to Remand*** (*Doc. 9*) at 1.

A *de novo* hearing was conducted by the ALJ on November 21, 2003. (*R. at 22-45*.)  Plaintiff was present and testified at the hearing. (*R. at 22, 1-36, 39.*)  A vocational expert (hereinafter, "VE")

---

[2]Plaintiff's amended complaint alleges that he applied for both disability insurance benefits and supplemental security income benefits.  *See **Amended Complaint** (Doc. 17)* at ¶ 4.  However, Plaintiff's application filed with the Social Security Administration shows that he only applied for disability insurance benefits.  (*R. at 67.*)

also testified at the hearing. (*R. at 36-45.*) Plaintiff was represented by counsel at the hearing. (*R. at 22.*) On February 19, 2004, the ALJ issued a second decision in which he found that Plaintiff was not disabled at step four of the five-step sequential evaluation process set forth in *20 C.F.R. § 404.1520*. (*R. at 12.*) The ALJ made the following findings, *inter alia*, with regard to Plaintiff: (1) he meets the non-disability requirements for a period of disability and disability insurance benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through December 31, 2003; (2) he has not engaged in substantial gainful activity since the alleged onset of disability; (3) he has a "severe" impairment pursuant to the requirements in *20 C.F.R. § 404.1520(c)*;[3] (4) his impairment does not meet or medically equal one of the listed impairments in Appendix 1 to Subpart P of Part 404; (5) his allegations regarding his limitations are not totally credible for the reasons set forth in the decision; (6) he has the residual functional capacity (hereinafter "RFC") to perform a limited range of light work consistent with the ALJ's second hypothetical question to the VE;[4] (7) his past relevant work as a manager of an indoor gun range and a security guard did not require the performance of work-related activities precluded by his RFC; (8) his medically

---

[3]The ALJ found that Plaintiff had the severe impairment of degenerative lumbar disc disease. (*R. at 11.*) Under relevant Social Security regulations, an impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. *See 20 C.F.R. § 404.1520(c).*

[4]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." *20 C.F.R. § 404.1567(b).*

determinable degenerative lumbar disc disease does not prevent him from performing his past relevant work; and (9) he was not under a "disability," as defined in the Social Security Act, at any time through the date of the decision. (*R. at 11-12.*)

After the ALJ issued his second decision, this case was re-opened on July 29, 2004. *See Order* (*Doc. 16*) (granting Defendant's *Unopposed Motion to Reopen* (*Doc. 15*)). Plaintiff subsequently filed his amended complaint in this case on August 30, 2004. *See Plaintiff's Amended Complaint* (*Doc. 17*).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied the correct legal standards. *See Hamilton v. Sec'y. of Health & Human Services*, 961 F.2d 1495, 1497-1498 (10th Cir. 1992). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and Plaintiff is not entitled to relief. *See, e.g., Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). This Court's assessment is based on a meticulous review of the entire record, where the Court can neither re-weigh the evidence nor substitute its judgment for that of the agency. *See Hamlin v. Barnhart*, 365 F.3d at 1214; *see also Langley v. Barnhart*, 373 F.3d at 1118. "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d at 1118 (*citation and quotation omitted*); *see also Hamlin v. Barnhart*, 365 F.3d at 1214; *Doyal v. Barnhart*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."

*Langley v. Barnhart*, 373 F.3d at 1118 (*citation and quotation omitted*); *see also Hamlin v. Barnhart*, 365 F.3d at 1214.

A claimant has the burden of proving his or her disability,[5] which is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *42 U.S.C. § 423(d)(1)(A)*. A five-step sequential evaluation process has been established for evaluating a disability claim. *See Bowen v. Yuckert*, 482 U.S. 137, 137 (1987). At the first four levels of the sequential evaluation process, the claimant must show that he is not engaged in substantial gainful employment; he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities; his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under *20 C.F.R. Pt. 404, Subpt. P, App. 1*;[6] and he is unable to perform work that he has done in the past. *See Reyes v. Bowen*, 845 F.2d 242, 243 (10th Cir. 1988). At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other substantial gainful activity considering his residual functional capacity (hereinafter "RFC"), age, education, and work experience. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

---

[5]*See Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993).

[6]If a claimant can show that his impairment meets or equals a listed impairment, and also meets the duration requirement in *20 C.F.R. § 404.1509* (requiring that an impairment have lasted or be expected to last for a continuous period of at least twelve months), he will be found disabled. *See 20 C.F.R. §§ 404.1520(a)(4)(iii) and 1520(d)*.

### III.  Plaintiff's Age, Education and Work Experience

Plaintiff was fifty-seven years old on the date of the second hearing.  (*R. at 24, 67.*)  Plaintiff completed high school and one year of college.  (*R. at 91.*)  Plaintiff has past relevant work experience as a deputy sheriff, manager of an indoor gun range and security officer at a casino.  (*R. at 86, 106, 108.*)

### IV.  Discussion/Analysis

Plaintiff contends that the ALJ erred at steps three and four of the sequential analysis.  Specifically, Plaintiff asserts that the ALJ erred in (1) failing to give appropriate consideration to the opinion of physician Mary Martinez, M.D., who Plaintiff claims was his treating physician;[7] (2) failing to find that Plaintiff's impairment met or equaled the presumptively disabling impairment listed in the regulations at *§ 1.04(A) of 20 C.F.R. Pt. 404, Subpt. P, App. 1*;[8] and (3) finding that Plaintiff had the RFC to perform his past relevant work as a security guard.  Plaintiff asks the Court to reverse the decision of the Commissioner and order the payment of disability insurance benefits or, in the alternative, to remand this case for further proceedings consistent with applicable law.  *See Plaintiff's Motion to Reverse or Remand Administrative Agency Decision* (*Doc. 20*) *at 1; **Plaintiff's Brief in Chief** *(*Doc. 21*) *at 18.*  Defendant argues that the ALJ applied the correct legal standards and

---

[7]The heading of Plaintiff's argument on this issue in the brief in support of his motion also states that the ALJ erred "in failing to find that the claimant had a less than sedentary residual functional capacity;" however, Plaintiff's motion and brief do not contain any argument on that subject.  *See **Plaintiff's Brief in Chief*** (*Doc. 21* at 11).

[8]The heading of Plaintiff's argument on this issue in the brief in support of his motion identifies the subject listing as *§ 1.04(C)*; however, it is apparent from his argument that the listing in question is *§ 1.04(A)*.

correctly determined that Plaintiff is not disabled based on substantial evidence.  *See Defendant's*

***Response to Plaintiff's Motion to Reverse or Remand*** (*Doc. 24*) *at 9.*

## A.  Dr. Martinez' Opinion

Plaintiff contends that the ALJ failed to give appropriate consideration to the opinion of physician Mary Martinez, M.D., who he claims was his treating physician.  Defendant argues that Dr. Martinez was not Plaintiff's treating physician and that the ALJ correctly evaluated her opinion.

### 1.  Whether Dr. Martinez was Plaintiff's Treating Physician

Under the Social Security regulations, a treating physician is called a "treating source" which is defined, in pertinent part, as:

> **[Y]our own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.**  Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s).  We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s).

*20 C.F.R. § 404.1502* (*emphasis added*).  As the Tenth Circuit has explained, the regulations and case law "require[] a relationship of both duration and frequency," and doctors are generally considered "treating sources" when they have "seen the claimant a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment."  *Doyal v. Barnhart*, 331 F.3d 758, 762-763 (10th Cir. 2003) (*quotation omitted*).  The question of whether Dr. Martinez is a treating physician is significant because, according to what has become known as the "treating physician rule,

the Commissioner will generally give more weight to medical opinions from treating sources than those from non-treating sources." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (*citing 20 C.F.R. § 404.1527(d)(2)*).

Dr. Martinez is a physician in Ruidoso, New Mexico. (*R. at 137.*) The *Record* shows that Plaintiff visited Dr. Martinez approximately six times, over a one-year period, prior to his second administrative hearing in November of 2003.[9] The notes of these visits suggest that Dr. Martinez may have been assigned to Plaintiff as his primary care physician.[10] At Plaintiff's initial visit with Dr. Martinez, she diagnosed him as suffering from "[m]ajor depression vs dysthymia vs adjustment disorder," and "[c]hronic low back pain with difficulty ambulating." (*R. at 142.*) While her treatment notes indicate that she treated Plaintiff primarily for depression and erectile dysfunction (*R. at 138-143*), on at least two visits she examined his back and noted its condition. (*R. at 142-143, 182.*) The *Record* includes a "Lumbar Spine Residual Functional Capacity Questionnaire" (hereinafter, "LSRFC Questionnaire"),[11] dated August 10, 2001, that Dr. Martinez completed for Plaintiff in which she provided a detailed written evaluation of his back condition.[12]

---

[9]*See R. at 138-143, 176-182, 186.*

[10]In her notes of his initial visit on August 7, 2000, Dr. Martinez writes: "Mr. Irwin comes in the clinic for the first time to establish with a primary care physician as well as to get a signature for a handicap sticker." (*R. at 142.*) Her notes of this visit indicate that she took Mr. Irwin's medical history and performed a physical examination of his back. *Id.* She also noted her belief that he needed to see a specialist regarding his back. (*R. at 143.*)

[11]*See R. at 176-182.*

[12]In the LSRFC Questionnaire, Dr. Martinez diagnosed Plaintiff with "low back pain" and "Depression vs Dysthymia" and indicated, *inter alia*, that (1) a 1997 MRI showed that Plaintiff had a herniated disc at L5-S1 and degenerative changes at L4-L5 and L5-S1; (2) Plaintiff had symptoms of chronic low back pain, intermittent numbness and weakness, intermittent incontinence of urine,
(continued...)

The ALJ failed to state whether he considered Dr. Martinez a treating physician. In his discussion of Dr. Martinez' evaluation of Plaintiff's condition in the LSRFC Questionnaire, he stated only that he gave her evaluation "very little weight" because he found it "not entirely consistent with her own objective findings and not consistent with the record as a whole." (*R. at 10.*) However, he failed to explain or identify what the claimed inconsistencies were or discuss them in his decision. (*R. at 10.*)

Because the Court cannot determine from the *Record* whether the ALJ concluded that Dr. Martinez was Plaintiff's treating physician, it cannot meaningfully review the ALJ's findings and that issue should be decided on remand. The Court cannot "reweigh the evidence or try the issues *de novo* or substitute its judgment for that of the [ALJ]." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (*citations and quotation omitted*).

---

[12](...continued)
intermittent and worsening erectile dysfunction, and pain causing worsening depressive features; (3) Plaintiff had radiating lumbar back pain that worsened with walking, standing, picking up objects of less than ten pounds and laying down; (4) Plaintiff had objective signs including tenderness at L2-L5, muscle spasms and tenderness, abnormal gait, sensory loss, and muscle atrophy and weakness; (5) it was her opinion that Plaintiff was not a malingerer; and (6) Plaintiff had pain severe enough to often interfere with his attention and concentration. (*R. at 176-178.*) Dr. Martinez also gave the following assessment of Plaintiff's functional limitations in a work situation as a result of his impairments: (1) he can walk one city block without rest or severe pain; (2) he can continuously sit and stand twenty minutes at a time; (3) in an eight hour work day, with normal breaks, he can sit about three hours and stand or walk about three hours; (4) in an eight hour work day, he needs to walk every thirty minutes for ten minutes; (5) he needs a job that permits shifting positions at will from sitting, standing or walking; (6) he needs to take unscheduled breaks four to six times for ten to fifteen minutes during an eight hour work day; (7) he must use a cane or other assistive device for occasional walking or standing; (8) he can lift and carry up to twenty pounds occasionally; (9) he cannot stoop or crouch; and (10) he is likely to be absent from work more than four times a month as a result of his impairments or treatment. (*R. at 176-181.*)

**2.  Whether the ALJ Gave Appropriate Consideration to Dr. Martinez' Opinion**

Plaintiff contends that the ALJ failed to give appropriate consideration to Dr. Martinez' opinion contained in the LSRFC Questionnaire and failed to apply the correct legal standards in evaluating her opinion.  Defendant disputes this contention.

The method of evaluating a physician's medical opinion is established by regulation. *See 20 C.F.R. § 404.1527*.  If a physician is a treating physician, the evaluation is a two-step process.  First, the ALJ must determine if the opinion is entitled to controlling weight.  *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)). This step requires the ALJ to "first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques."  *Id.*  If the opinion is well-supported, the ALJ "must then confirm that the opinion is consistent with other substantial evidence in the record."  *Id.*  If the opinion is deficient in either of these respects, *i.e.*, if it is not well-supported or is not consistent with other substantial evidence in the record, "it is not entitled to controlling weight."  *Id.* (*quotation omitted*); *see also 20 C.F.R. § 404.1527(d)(2)*.  Second, "[e]ven if a treating physician's opinion is not entitled to controlling weight, treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [20 C.F.R.] § 404.1527." *Id.* (*citations and quotation omitted*).  These factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including treatment provided and the kinds of examination and testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) the consistency between the opinion of the physician and the record as a whole; (5) whether the physician is a specialist in his or her area of specialty; and (6) other factors which tend to support or contradict the opinion.  *Id.*

(*quotation omitted*); *see also 20 C.F.R. § 404.1527(d)*. Additionally, the ALJ "must give good reasons . . . for the weight assigned to a treating physician's opinion, that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Langley v. Barnhart*, 373 F.3d at 1119 (*citations and quotation omitted*). In rejecting a treating physician's assessment, the ALJ "may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (quoting *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002)). Finally, even if a physician is not a treating physician, his or her opinions must be weighed using all of the factors set forth in *20 C.F.R. § 404.1527(d)* ("Regardless of its source, we will evaluate every medical opinion we receive."). This regulation requires that each of the following factors be considered in deciding the weight to be given to a medical opinion that is not a treating source's opinion: (1) examining relationship; (2) treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors which tend to support or contradict the opinion. *See 20 C.F.R. § 404.1527(d)(1)-(6).* The ALJ's analysis of Dr. Martinez' opinion is deficient in several respects. First, as discussed above, he failed to determine if Dr. Martinez was Plaintiff's treating physician. Second, even assuming that Dr. Martinez was not a treating physician and her opinion was not entitled to controlling weight, the ALJ failed to provide an adequate explanation of how he assessed the weight given her opinion. In choosing to discount Dr. Martinez' opinion, the ALJ mentioned, without explanation, only one of the factors to be considered in weighing medical opinion evidence (inconsistencies in the record) and failed to discuss that factor or any other factor in the required evaluation. *See, e.g., Robinson v. Barnhart*, 366

F.3d at 1083 (quoting *Watkins v. Barnhart*, 350 F.3d at 1301) ("[w]e cannot simply presume the ALJ applied the correct legal standards in considering [a physician's] opinion."). Because the ALJ failed to provide an adequate explanation for the weight he assigned Dr. Martinez' opinion, the Court is unable to properly review the ALJ's decision. *See, e.g., Langley v. Barnhart*, 373 F.3d at 1123 (reasons for rejecting physician's opinion must be "sufficiently specific" for court to meaningfully review ALJ's findings).

Based on the foregoing, the Court finds that the ALJ failed to apply the correct legal standards in evaluating Dr. Martinez' opinion. Accordingly, this case should be remanded for further proceedings consistent with the requirements of *20 C.F.R. § 404.1527(d)*.

**B.  Whether Plaintiff's Condition Meets or Equals the Requirements of Listing 1.04(A)**

Plaintiff asserts that the ALJ erred in finding that Plaintiff's back condition failed to meet or equal the requirements of Listing 1.04(A).[13] The ALJ's failure to properly evaluate Dr. Martinez' opinion potentially affects his determination of whether Plaintiff's condition meets or equals a listed impairment. Thus, the Court need not reach this issue "because [it] may be affected by the ALJ's resolution of this case on remand." *Robinson v. Barnhart*, 366 F.3d 1078, 1085 (finding that ALJ's failure to properly evaluate physician's opinion undermined his assessment of claimant's limitations). It is unclear whether, and to what extent, a re-evaluation of Dr. Martinez' opinion will affect the ALJ's findings regarding Plaintiff's abilities and limitations. However, it is not the Court's role in this appeal

---

[13]Listing 1.04(A) is a listing for "disorders of the spine," including "degenerative disc disease," resulting in compromise of a nerve root or the spinal cord with: "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." *20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.04(A)*.

to "reweigh the evidence or try the issues *de novo* or substitute its judgment for that of the [ALJ]." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992). Therefore, the ALJ is directed to proceed as necessary in light of any new findings.

### C.  Whether Plaintiff has the RFC to Perform his Past Relevant Work as a Security Guard

The ALJ found that Plaintiff has the RFC to perform "a limited range of light work consistent with my second hypothetical question to the vocational expert."[14] (*R. at 9, 12.*) In reliance on that finding, and the testimony of the VE, the ALJ found that Plaintiff's "past relevant light work as a manager of an indoor gun range and a security guard did not require the performance of work-related activities precluded by his residual functional capacity . . . ." (*R. at 11-12.*) Plaintiff contends that the VE did not testify that Plaintiff could perform his past relevant work as a security guard, contrary to the finding made by the ALJ. Based on a review of the transcript of the second hearing, the Court agrees.

In his decision, the ALJ described the VE's testimony that he relied on in finding that Plaintiff could return to his past relevant work as follows:

> The impartial vocational expert testified that based upon the claimant's residual functional capacity, the claimant could return to his past relevant light work as a manager of an indoor gun range and a security guard as he actually performed these jobs.

(*R. at 11.*) However, a review of the VE's testimony at the second hearing shows that the VE testified in response to the ALJ's first, and least restrictive, hypothetical question, that Plaintiff could only

---

[14]From the transcript of the second hearing, it is difficult to determine exactly what the ALJ's second hypothetical question to the VE was; however, it appears to be the cumulative colloquy of questions and answers between the ALJ and the VE that appear in the *Record* at 38-41.

13

return to his past relevant work as the manager of an indoor gun range.[15] (*R. at 40.*) There is no testimony by the VE in the transcript of the second hearing that Plaintiff could return to his past relevant work as a security guard.[16] (*R. at 22-45.*) Thus, the VE's testimony does not support the ALJ's conclusion that Plaintiff could return to work as a security guard.

Because the ALJ relied on an opinion by the VE that does not appear in the *Record*, and because the ALJ otherwise failed to explain the basis for his conclusory opinion that Plaintiff could perform his past relevant work as a security guard, the ALJ's opinion on this issue is not support by

---

[15]The relevant testimony, given after the VE testified that she had reviewed Plaintiff's past work history (*R. at 37*), was as follows (questions, denoted by "Q," are by the ALJ; answers, denoted by "A," are by the VE):

> Q . . . Now, for purposes of my first hypothetical, I'm going to restrict him to maximum lift and carry at twenty pounds occasionally, ten pounds frequently, which is, roughly, a gallon of milk, which weights eight (INAUDIBLE) pounds. Just only occasionally climbs, stoop, kneel, crouch and crawl - - no balancing as a condition of employment. No climbing of ladders, ropes or scaffolds. No work at unprotected heights. Within the confines of that hypothetical, could the claimant return to any of his past relevant work, either as her performed it or as it would be performed within the national economy?
>
> A **Just** the manage [sic] of the indoor gun range.
>
> Q Okay. The **others** are all the heavier exertional limitations - -
>
> A **Very heavy**.
>
> Q - - the more posturals?
>
> A Yes sir. (*R. at 39-40.*) (*emphasis added*).

[16]After answering the ALJ's hypotheticals, the VE testified that Plaintiff had skills from his past law enforcement work ("surveillance" is the only skill mentioned) that would be transferable to the job of light security guard; however, the VE did not testify that Plaintiff could perform the job of light security guard. (*R. at 42-43.*)

substantial evidence and there is nothing for this Court to review. *See Winfrey v. Chater*, 92 F.3d 1017, 1025 (10th Cir. 1996) ("When, as here, the ALJ makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the VE's head, we are left with nothing to review.")  Because the Court cannot reweigh the evidence or make factual findings on behalf of the ALJ,[17] and because the lack of findings on this issue leaves the Court with nothing to review, this case must be remanded for further proceedings on the issue of whether Plaintiff can perform his past relevant work as a security guard. On remand, the ALJ should analyze Plaintiff's ability to perform his past relevant work as a security guard in the manner required by *Winfrey v. Chater*, 92 F.3d 1017, 1024-1026 (10th Cir. 1996).

## V.  Conclusion

In conclusion, the Court **FINDS** that the Commissioner's decision does not comport with relevant legal standards and his opinion that Plaintiff can return to his past relevant work as a security guard is not supported by substantial evidence.  Accordingly, the Court will **GRANT** Plaintiff's *Motion to Reverse or Remand Administrative Agency Decision* (*Doc. 20*) and **REMAND** this case to the Commissioner.

---

[17]*See Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992).

**WHEREFORE, IT IS HEREBY ORDERED** that Plaintiff's *Motion to Reverse or Remand Administrative Agency Decision* (*Doc. 20*) is **GRANTED** and this case is **REMANDED** to the Commissioner for further proceedings in accordance with this Memorandum Opinion and Order. A final order will be entered concurrently with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

*Lourdes A. Martínez*
**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**